Justin Castro
  Movant

— v —

United States Of America
  Respondent

Case No.: 2:17-CR-000103-KJD-VCF

## Movant's Response To The Government's Response

Comes now, Movant files this response Pro-se. Movant is a layman of the law, unskilled in the law and therefore, request that this response be construed liberally. Haines-v-Kerner, 404 U.S. 519 (1972).

Movant states the following in this response:

(1) The U.S. District Court Judge ordered the Government to respond to the Movant's title 28 U.S.C. section 2255(f)(1) motion/petition/memorandum of law on April 9th 2021. The Government never did as was required by the U.S. District Court to do so, and if the Government as it claims it did, respond, then why is it that Movant continued to call the Clerk of Court asking if the Government had responded. The answer from the Clerk of the court was always "No! The Government had not responded." Therefore, the Government is straight out lieing to the Judge, because the Government never responded, and if it had responded, the Federal Prison in Coleman Florida where Movant is stationed at, would have a legal discovered record of it. The Prison does not. Why? Because the Government is lieing. It did not ever respond as the court had required and ordered it to do so.

(2) The Movant is not out of time and was timely in filing his section 2255(f)(1) motion. It's the Government that is untimely and fabricating lies, decieit, and trickery to convince this Honorable Court that it responded. It did not respond to the Judge's order to respond to the Movant's section 2255(f)(1) Motion. It is the Government that never ever filed a motion to dismiss the Movant's section 2255(f)(1) Motion. Your Honor, the Government is lieing, it never ever sent the Movant a response to your April 9th 2021 order. I, Justin Castro # 53987-048 duly swear under the penalty of perjury, that the Government in this case is lieing and fabricating to this Honorable Court, that it never ever responded to the Judge's order of April 9th 2021 to respond to the Movant's section 2255 Motion 28 U.S.C. section 1746. I, the Movant swears to this under the penalty of perjury, so help me GOD, the Government is lieing to the court Your Honor.

(3) What person in their right mind would not want to appeal a 18 year sentence. Movant also instructed counsel to Appeal his sentence and conviction. Counsel simply refused to do so, stating to the Movant that he had nothing to Appeal, that he had waived all of his statute and constitutional rights away by pleading guilty. Counsel told the Movant this on the day of sentencing and several other occassions on the phone. Counsel simply refused

to Appeal, and or file even a notice of Appeal, knowing the Movant is a layman of the law, unskilled in the law, and therefore, counsel had a Fifth and Sixth Amendment duty to pursue a notice and direct Appeal upon the Movant's request to do so. By not doing so, counsel violated the Movant's Fifth Amendment Rights to due process, to the Movant's Sixth Amendment Rights to a direct and notice of Appeal upon the Movant's request to do so at sentencing, and on several other occassions by phone. The prison phones are recorded Your Honor. Also Movant wishes to continue to pursue all of his other claims and issues. Flore-Roe-v-Ortega 528 U.S. 470-480 (2000); Garza-v-Idaho, 139 S.Ct. 738-741 (2019). Counsel Counsel had a Fifth and Sixth Amendment duty to pursue a notice and direct Appeal upon Movant's request to do so.

(4) The Government even state the error below in footnote 1, where it states counsel too, made an oversight, and prejudice the Movant by not responding to the Government. Now you know for sure Your Honor, that the Government intentionally and deliberately lied to you, because Movant's counsel never sent the Government the information it requested from Movant's counsel. So how is it that the Government could have then responded back to the Movant without the information it requested from Movant's counsel. Now you know for sure that the Government lied to this court when it says it responded back to the Movant's section 2255 (f)(1) Motion.

(5) The Government and counsel had both prejudiced the Movant and caused the Movant ___ years in a federal prison. Movant therefore continues to suffer prejudice from counsel and from the Government because, both are in violation of the Movant's Fifth and Sixth Amendment Rights to due process, and the Movant's Sixth Amendment Rights under the United States Constitution.

Conclusion

Movant hopes and prays that the Government will be sanctioned for lieing to the court and misleading the court with fabrications as stated above and that Movant will be granted a Evidentiary Hearing based on all of the aboved stated reasons in this response to the Government's Response.

Respectfully
_(signature)_
Justin Castro
#53987-048

Dated 10/20/23

28 U.S.C. Section 1746

Mail Box Rule
  Lack-v-Houston
487 U.S. 266 (1988)

Dear Your Honor,

This response to the Government's response was prepared for Mr. Castro by Johnat Bedgood and Donald G. Green #39747-019, both federal incarcerated Pro-Se Litigants. Because Mr. Castro is unskilled in the law, a slower learner with various mental disorders, and can bearley read and write on a reasonable grade level, his comprehension is somewhat very difficult and complicated. Thereby needing the help and legal assistance by federal inmates Mr. Bedgood and Mr. Green.

# CERTIFICATE OF SERVICE

I verify under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that a copy of this filing was handed to prison officials for mail, with prepaid first class postage attached, to the following:

Clerk, U.S. District Court
District Of Nevada
Lloyd D. George U.S. Courthouse
333 Las Vegas Blvd. So. Rm. 1334
Las Vegas, NV 89101

10/20/23
Date

Signature: _____
Printed Name: Justin Castro
Reg. No. 53987-048
Facility Name: FCI Coleman 'Medium'
Address: P.O. Box 1032
City, State ZIP: Coleman, FL 33521-1032

# Bureau of Prisons
# Psychology Services
## Diagnostic and Care Level Formulation

**SENSITIVE BUT UNCLASSIFIED**

| | | | | |
|---|---|---|---|---|
| Inmate Name: | CASTRO, JUSTIN | | | Reg #: 53987-048 |
| Date of Birth: | 04/21/1998 | Sex: M | Facility: COM | Unit Team: A 4 |
| Date: | 04/30/2021 15:00 | Provider: | Colon-Berrios, Amarilis PsyD | |

### Relevant Historical Information

IM Castro is a Castro is 23 year(s), 0 month(s), and 8 day(s) inmate who was evaluated to determine his IQ, and the possibility of been recommended for the SKILLS program. During the evaluation he reported had a hard childhood. He stated that his parents were both in prison at different times due to fraud and some other charges. He stated he was in foster care and "on the streets" most of the time. PSR noted that IM Castro began having legal problems since he nine years old. His faults were related to Possession of
Graffiti Implements, Arrest Writ Violation of Probation, Obstructing an Officer,
Conspiracy to Commit Larceny from a Person, Battery, Possession, Manufacture & Distribute Explosive Devices, Robbery, Possession of Stolen Property, Possession of Drug not to be Introduce Into Interstate Commerce, and Assault with a Deadly Weapon.

IM Castro reported he is the youngest of seven siblings, and that his parents and siblings are in Las Vegas. He reported he maintains contact with them. IM Castro reported a history of neglect. He denied sexual or physical abuse.

Per PSR: "He recalled running around and being placed in group homes. Castro indicated that he was placed in group homes when is father was imprisoned, and his mother was not home. Subsequently, his mother went to prison after his father was released from a term of imprisonment. Castro also recalled domestic abuse issues between members of the household. Some domestic abuse occurred between the defendant's parents, and when his parents became intoxicated, the children would get hit. Castro emphasized that he is still trying to address his childhood events."

Mental Health:
Regarding his mental health history, the inmate reported he is currently taking Mirtazapine 15 MG Tab. despite he acknowledged some depression symptoms in the past, he denied any current clinically significant mental health symptoms and stated he only has the medication for the days he cannot sleep well. IM Castro was oriented about the correct use of the medication and the importance of discussing with the medical his desire to finish the treatment if it is not needed. IM Castro stated that when he was 15-16 y/o, while in foster care, he said was going to kill himself 15 -16 and ended up in a psychiatric hospital for two weeks. At that time he stated he was prescribed Seroquel.

Per PSR:
"When he was young, Castro was reportedly diagnosed with the intermittent explosive
disorder (IED), and separation anxiety. IED is characterized by outbursts of anger or
violence. According to the defendant, this is the reason he does things without thinking.
Castro also mentioned that he was diagnosed with depression and anxiety by the medical
staff at the Nevada Southern Detention Center. The defendant reportedly sees a psychiatrist every couple of months, and is presently taking Seroquel, which is used to
treat schizophrenia, bipolar disorder, and depression."

Substance abuse:
Per PSR: "The defendant reportedly started drinking alcohol between the ages of 14 and prior to his arrest, he described his alcohol use as occasionally. Castro mentioned first using marijuana between the ages of 13 and 14 years. He said he occasionally used marijuana and his last use was a couple of days prior to his arrest. The defendant tried heroin once when he was 18 years old. Castro admitted that his drug of choice and the one illegal substance that has caused him the most problem is methamphetamine. He first used methamphetamine at the age of 18. Prior to his arrest, the defendant mentioned using up to an 8-ball, 3.5 grams of methamphetamine on a daily basis. Castro also noted that he would use between four and five pills of Xanax almost on a daily basis. He started using Xanax when he was between 16 and 17 years old. Castro stated that his drug use contributed to the commission of the instant offense. He emphasized that he committed the instant offense in order to obtain "money and get high." "

### Presenting Problem/Symptom

IM Castro was administered the WAIS-IV by this writer to assess his current intellectual functioning for a potential Skills

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | CASTRO, JUSTIN | | | Reg #: | 53987-048 |
| Date of Birth: | 04/21/1998 | Sex: | M   Facility: COM | Unit Team: | A 4 |
| Date: | 04/30/2021 15:00 | Provider: | Colon-Berrios, Amarilis PsyD | | |

Program referral.

### Diagnostic Formulation

IM Castro scored a 67 on his Full-Scale IQ (FSIQ), which places him in the Extremely Low range of intelligence and the 6% percentile rank. IM Castro shows deficits in intellectual dysfunctions in areas such as reasoning, problem-solving, planning, abstract thinking, judgment, academic learning, and learning from experience, which was confirmed by his IQ Test results, as well as his clinical assessment, including history, the reason for referral and observations made by this writer.

### Care Level Formulation

Based on the IQ test results, history and observations, IM Castro will be changed to a CARE3-MH level for SKILLS program participation due to his Moderate Intellectual Disability Disorder. He will be assigned to a mental health companion during the program participation.

### Diagnosis:

Intellectual Disability (Intellectual Developmental Disorder): Moderate, F71 - Current

Completed by Colon-Berrios, Amarilis PsyD on 04/30/2021 15:23

**Reviewed by Ramos, I. PhD/Deputy Chief Psychologist on 05/03/2021 10:35**

# Bureau of Prisons
# Psychology Services
# Intellectual Evaluation

**SENSITIVE BUT UNCLASSIFIED**

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | CASTRO, JUSTIN | | | Reg #: | 53987-048 |
| Date of Birth: | 04/21/1998 | Sex: | M    Facility: COM | Unit Team: | A 4 |
| Date: | 04/30/2021 13:28 | Provider: | Colon-Berrios, Amarilis PsyD | | |

### Educational History

IM Castro reported that he was never good at school. "I was always behind. Reading, writing, and specially math. I can't divide I have to use the calculator". He stated he always had difficulties reading, writing, and understanding the information. He reported he finished school "because they wanted to help me", but I never learned what I was supposed to. IM Castro stated he sometimes confuses the letters and has a hard time organizing the information in his head. During the evaluation, it was observed that most of the time he answered impulsively. and then acknowledged he did not choose the correct answer to the question. Then he demonstrated frustration with comments like "oh shit, that was not the answer", "I'm lost", "I don't know", "I can't go back". It was also observed that IM Castro tends to confuse numbers 6 and 9 continuously.

Per PSR:
"Castro reportedly earned his high school diploma in 2016 while he was in custody at the Caliente Youth Center, located in Caliente Nevada. According to the defendant, he also obtained a welding certificate while at the Caliente Youth Center. No further formal education was reported by Castro."

### Relevant Psychosocial History

IM Castro is a Castro is 23 year(s), 0 month(s), and 8 day(s) inmate who was evaluated to determine his IQ, and the possibility of been recommended for the SKILLS program. During the evaluation he reported had a hard childhood. He stated that his parents were both in prison at different times due to fraud and some other charges. He stated he was in foster care and "on the streets" most of the time. PSR noted that IM Castro began having legal problems since he nine years old. His faults were related to Possession of
Graffiti Implements, Arrest Writ Violation of Probation, Obstructing an Officer,
Conspiracy to Commit Larceny from a Person, Battery, Possession, Manufacture & Distribute Explosive Devices, Robbery, Possession of Stolen Property, Possession of Drug not to be Introduce Into Interstate Commerce, and Assault with a Deadly Weapon.

IM Castro reported he is the youngest of seven siblings, and that his parents and siblings are in Las Vegas. He reported he maintains contact with them. IM Castro reported a history of neglect. He denied sexual or physical abuse.

Per PSR: "He recalled running around and being placed in group homes. Castro indicated that he was placed in group homes when is father was imprisoned, and his mother was not home. Subsequently, his mother went to prison after his father was released from a term of imprisonment. Castro also recalled domestic abuse issues between members of the household. Some domestic abuse occurred between the defendant's parents, and when his parents became intoxicated, the children would get hit. Castro emphasized that he is still trying to address his childhood events."

Mental Health:
Regarding his mental health history, the inmate reported he is currently taking Mirtazapine 15 MG Tab. despite he acknowledged some depression symptoms in the past, he denied any current clinically significant mental health symptoms and stated he only has the medication for the days he cannot sleep well. IM Castro was oriented about the correct use of the medication and the importance of discussing with the medical his desire to finish the treatment if it is not needed. IM Castro stated that when he was 15-16 y/o, while in foster care, he said was going to kill himself 15 -16 and ended up in a psychiatric hospital for two weeks. At that time he stated he was prescribed Seroquel.

Per PSR:
"When he was young, Castro was reportedly diagnosed with the intermittent explosive disorder (IED), and separation anxiety. IED is characterized by outbursts of anger or violence. According to the defendant, this is the reason he does things without thinking. Castro also mentioned that he was diagnosed with depression and anxiety by the medical staff at the Nevada Southern Detention Center. The defendant reportedly sees a psychiatrist every couple of months,

| | | | | | | |
|---|---|---|---|---|---|---|
| Inmate Name: | CASTRO, JUSTIN | | | | Reg #: | 53987-048 |
| Date of Birth: | 04/21/1998 | Sex: | M | Facility: COM | Unit Team: | A 4 |
| Date: | 04/30/2021 13:28 | Provider: | Colon-Berrios, Amarilis PsyD | | | |

and is presently taking Seroquel, which is used to treat schizophrenia, bipolar disorder, and depression."

Substance abuse:
Per PSR: "The defendant reportedly started drinking alcohol between the ages of 14 and prior to his arrest, he described his alcohol use as occasionally. Castro mentioned first using marijuana between the ages of 13 and 14 years. He said he occasionally used marijuana and his last use was a couple of days prior to his arrest. The defendant tried heroin once when he was 18 years old. Castro admitted that his drug of choice and the one illegal substance that has caused him the most problem is methamphetamine. He first used methamphetamine at the age of 18. Prior to his arrest, the defendant mentioned using up to an 8-ball, 3.5 grams of methamphetamine on a daily basis. Castro also noted that he would use between four and five pills of Xanax almost on a daily basis. He started using Xanax when he was between 16 and 17 years old. Castro stated that his drug use contributed to the commission of the instant offense. He emphasized that he committed the instant offense in order to obtain "money and get high." "

**Learning Disability Identified**

As previously reported, it was observed during the evaluation, continuous difficulties in mathematics and the tendency to switch number 6 and 9 when completing the exercises, which could be related to dyslexia. It was also observed, that IM Castro tends to answer questions impulsively, choosing the wrong answer and then feeling frustrated and asking for the examiner's approval. Further information would be needed to determine a specific learning disorder.

**Results of IQ Testing**

IM Castro was administered the WAIS-IV by this writer to assess his current intellectual functioning for a potential Skills Program referral. IM Castro showed appropriately dressed in prison attire. He cooperatively completed the test. Regarding the Mental Status Examination, the inmate was alert and oriented to himself. He reported feeling calm, which was congruent with his affect. The inmate did not report any current significant alterations in his perceptual processes. IM Castro denied any current or past suicidal, homicidal, and self-harm ideation, intention, or plan. He made regular eye contact, and no signs of a thought disorder were noted. MSE appeared stable and within normal limits. The inmate did not display clinically significant signs or symptoms of a mental health condition during the evaluation process. During the evaluation, he appeared focused, trying to concentrate and taking tasks seriously.

IM Castro scored a 67 on his Full-Scale IQ (FSIQ), which places him in the Extremely Low range of intelligence and the 6% percentile rank.

Regarding the scales: He scored a 74 on the Verbal Comprehension Index (VCI), which places him in the Borderline range. The VCI is a measure of verbal concept formation, verbal reasoning, and knowledge acquired from one's environment. He falls in the 4% percentile rank.

He scored a 104 on the Perceptual Reasoning Index (PRI), placing him in the Average range. The PRI is a measure of perceptual and fluid reasoning, spatial processing, and visual-motor integration. He falls in the 61% percentile rank.

He scored a 69 on the Working Memory Index (WMI), placing him in the Extremely Low range. Working Memory is a measure of one working memory abilities that require one to retain information in memory, perform some mental operation on it, then produce a result. It involves attention, concentration, mental control, and reasoning. He falls in the 2% percentile rank.

He scored a 74 on the Processing Speed Index (PSI), which places him in the Extremely Low range. The PSI provides a measure of the ability to quickly and correctly scan, sequence, or discriminate visual information as well as short-term visual memory, attention, and visual-motor coordination. He falls in the 4% percentile rank.

Based on IM Castro IQ test results, it is considered appropriate for IM Castro to be considered for the Skills program based on these results. IM Castro stated he has always been interested in acquiring more skills and improve his learning processes.

**Cognitive Disability Identified**

IM Castro scored a 67 on his Full-Scale IQ (FSIQ), which places him in the Extremely Low range of intelligence and the

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | CASTRO, JUSTIN | | | Reg #: | 53987-048 |
| Date of Birth: | 04/21/1998 | Sex: M | Facility: COM | Unit Team: | A 4 |
| Date: | 04/30/2021 13:28 | Provider: | Colon-Berrios, Amarilis PsyD | | |

6% percentile rank. IM Castro shows deficits in intellectual dysfunctions in areas such as reasoning, problem-solving, planning, abstract thinking, judgment, academic learning, and learning from experience, which was confirmed by his IQ Test results, as well as his clinical assessment, including history, the reason for referral and observations made by this writer.

Completed by Colon-Berrios, Amarilis PsyD on 04/30/2021 15:23

**Reviewed by Ramos, I. PhD/Deputy Chief Psychologist on 05/03/2021 10:35**